## McCULLOUGH BROTHERS INCORPORATED *v.* SPEER.

PER CURIAM. Under the pleadings and conflicting evidence the judge did not abuse his discretion in refusing an interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Beck, P. J., and Bell, J., who dissent.*

No. 8612. JULY 15, 1932. REHEARING DENIED SEPTEMBER 21, 1932.

*F. M. Bird* and *John I. Kelley,* for plaintiff.
*Robert L. Russell,* for defendant.

BECK, P. J. I am constrained to dissent from the opinion of the majority under the facts contained in the record, which are in substance as follows: On or about March 1, 1931, C. W. Speer entered the employment of McCullough Brothers in the capacity of salesman. Speer prior to this employment was engaged in operating a business of supplying fruits, food, produce, and perishable foodstuffs to the retail dealers in the cities of Winder and Monroe, Georgia, and, by his own affidavit given in this case, was skilled in said business, was well known to the customers and trade, and enjoyed a prosperous business. Due to Speer's experience in this business and his acquaintance with the trade and customers, McCullough Brothers agreed to purchase the automobile truck used by Speer at

a consideration of $400, and to give him employment, the transaction including a transfer of Speer's business, exclusive of cash and accounts, but inclusive of good will and patronage. This arrangement became effective on or about March 1, 1931, with the understanding of the parties that the employment was preliminary and tentative, but that a definite written agreement would be entered into as soon as the parties could determine upon a fair basis as a result of the preliminary employment. Such a written agreement was actually entered into on the 28th day of March, 1931, in which it was provided that Speer would receive six per centum of the gross amount of sales made by him, as compensation for his services, and as consideration for the transaction between the parties, in addition to the $400 allowed for the truck. Speer was offered $35 per week salary and $15 per week traveling expenses as compensation, but instead insisted upon the six per centum commission. In this written contract was contained a negative covenant whereby Speer agreed, in the event the contract was terminated as provided therein, he would not engage in the fruit, produce, or food business in any capacity within the territory encompassed within a radius of one hundred miles of the City of Atlanta, for a period of five years from such termination. The contract also contained a provision that if Speer's operation failed to show a profit for employer for thirty consecutive days, McCullough Brothers might terminate the contract. On April 27, 1931, Speer terminated the contract of employment and ceased performance of his duties thereunder. He immediately went into the fruit, produce, and food business, operating in exactly the same manner he had operated for McCullough Brothers and in competition with them, in the cities of Winder and Monroe, which cities are within one hundred miles of the City of Atlanta.

McCullough Brothers Inc. brought a petition in equity, seeking to enjoin the breach by Speer of the negative covenant contained in the contract as above indicated. After a hearing, the court rendered a judgment refusing an injunction, and in connection therewith an opinion which is as follows: "This case was heard at the time and place provided for in the order of the court, and decision has been reserved until this day. The consideration of four hundred dollars mentioned in the contract in this case was one Chevrolet truck. The only other consideration mentioned is one dollar, which

the evidence shows was never paid. In the case of *Morris-Forrester Oil Company* v. *Taylor,* 158 *Ga.* 201 [122 S. E. 680], the consideration was thirty thousand dollars, which was paid. The negative covenant mentioned in paragraph 6 of the contract, under the evidence in this case, is the issue that the court is to pass upon. Either party, under this clause of the contract, had the right to terminate the same with or without cause, and when that is done the defendant can not engage in the selling of produce and fruits within 100 miles of the City of Atlanta. This court has no sympathy with any one that would sign a contract with such a negative covenant in the same as is contained in this contract, but the court is interested in that feature of it as it bears upon public policy. See Code, §§ 4253 and 5496, as to personal services unless they are of peculiar merit or character. And it would seem that in order to enjoin a breach of such a contract for personal services they should be of peculiar merit or character. See *Hammond* v. *Georgian Company,* 133 *Ga.* 1 [65 S. E. 124], and *Shirk* v. *Loftis Brothers & Co.,* 148 *Ga.* 500 [97 S. E. 66]. The restraint must be reasonable before the same will be enforced by the courts (*Hood* v. *Legg,* 160 *Ga.* 620 [128 S. E. 891]), and this is to be determined by the facts in each case; and if it is unreasonable, it should not be enjoined. *Rakestraw* v. *Lanier,* 104 *Ga.* 188 [30 S. E. 735, 69 Am. St. R. 154]. It is true in this case that the contract has a limitation as to space and time that the defendant can not engage in the business as a salesman. But the work is not of a peculiar merit or character under the evidence. It may be that in order to protect the public against such contracts additional legislation will be necessary. The plaintiff in this case did not buy out any business, but simply employed a salesman who was acquainted with the produce and fruit business in Winder, Barrow County, and in Monroe, Walton County; and under the facts in this case, in view of the evidence that the services were of no peculiar merit or character, and owing to the doubtfulness as to whether there is any consideration, it is therefore ordered and adjudged by the court that the restraining order heretofore passed in this case is vacated and the injunction refused."

I can not concur in the opinion of the court below. The trial judge did state the general rule that "in order to enjoin a breach of such a contract for personal services they should be of peculiar merit

or character. . . The restraint must be reasonable before the same will be enforced by the courts, . . and this is to be determined by the facts in each case; and if it is unreasonable, it should not be enjoined." Section 5496 of the Civil Code contains the general rule: "Generally an injunction will not issue to restrain the breach of a contract for personal services, unless they are of a peculiar merit or character, and can not be performed by others." The use of the word "generally," which begins this section, implies that there are exceptions. In the case of *Kinney* v. *Scarbrough Co.*, 138 *Ga.* 77 (74 S. E. 772, 40 L. R. A. (N. S.) 473), it was said: "The jurisdiction of equity to enjoin a person doing business or performing service of a certain character has generally been invoked under one of four heads: (1) Where there has been a sale of a business and good will, with an ancillary agreement by the seller not to engage in the business in a certain territory. (2) Contracts by which an employee agrees to give his entire service to the employer, which sometimes include an express negative covenant not to serve any other person within a fixed time and territory. In such cases, the negative covenant will not be enforced by injunction, unless the services are of a peculiar merit or character and can not be performed by others. [Citing *Hammond* v. *Georgian Co.*, supra]. (3) Contracts binding one to desist from the practice of a learned profession. (4) A contract by an employee, ancillary to his contract of employment, not to engage in a competing business for himself or as an employee of another." In this part of the opinion in the case last cited the general rule is again stated; but I think that under the facts of this case the negative covenant is enforceable. The defendant Speer had been engaged in a business similar to the work which he. was expected to perform under the contract involved in this case. He had been selling goods and merchandise of the same character as that which constituted the business of the petitioner in this case. He had come into frequent contact with merchants dealing in that line of merchandise and had built up a business. He owned something valuable in the knowledge which he had or had acquired of the needs of the business of many merchants in the territory included within a radius of 100 miles of Atlanta. He had learned how to approach the merchants in his line of business. He had undertaken to transfer the benefits of this knowledge for a valuable consideration to his new employers,

McCullough Brothers Inc. It can not be said that the contract which he entered into with this firm was either unilateral or without consideration. In one sense at least the services of Speer were of peculiar merit or character relatively to his employers, McCullough Brothers; these services were to be performed by a man who had the particular knowledge necessary to give his services value. I do not mean that this fact rendered his services "of a peculiar merit or character" in the sense in which those terms are used in section 5496 of the Code; but they are of such a character as to bring the services within the rule recognized in Wark *v.* Ervin Press Corporation, 48 Fed. (2d) 152, 155. In that case it was said, in the decision of the Circuit Court of Appeals: "The answer alleges that there was nothing extraordinary or unique about Wark's services, and that he could be replaced without injury to his former employer, and that therefore the negative or restraining covenants of paragraph 6 of the contract are not enforceable. The trend of modern authorities is that such covenants, when reasonably limited as to time and place, and when reasonably calculated to protect the lawful business of the employer, will be enforced, even though the service is not of that unique and special nature as has often been the subject of judicial consideration." And the rule there stated is recognized in the decisions of this court. In *Shirk* v. *Loftis,* supra, it was said: "While a restrictive agreement by one who enters another's employment is not ancillary to the sale of a business, or the good will thereof, there can be no doubt that an agreement that during the term of the service, and for a reasonable period thereafter, the employee shall not become interested in or engage in a rival business, is reasonable and valid, the contract being otherwise legal and not in general restraint of trade. This is the rule followed by a majority of the American courts, and is supported by reason. See 6 R. C. L. 805, and cases cited in note; *Kinney* v. *Scarbrough Co.* [supra], where the restrictive agreement ancillary to the contract of employment was held illegal because the restraint was unlimited as to territory. With respect to contracts of the character here under consideration this court seems to be committed to the rule that the contract must be limited both as to time and territory, and not otherwise unreasonable." Manifestly the limitations as to time and territory are not unreasonable.

Neither can it be said in this case that the contract is unconscion-

able. The claim of the defendant in the case that he was an uneducated man, and that the contract was drawn by a lawyer for the other side, can hardly be considered as having weight in the consideration of the question involved here. The negative covenant that he should not engage in the business here in question within five years and within a radius of 100 miles of Atlanta must have been easily comprehensible to him, if he took the trouble to read it. He may have been a man uneducated in some respects, but he had long been engaged in business, had necessarily been a party to many transactions, and could easily have understood the terms implied in this contract in reference to not engaging in the business within the time and in the territory specified.

But it is insisted in this case that under the evidence the trial judge was authorized to find that the employer had breached the conditions and the dependent covenants of the contract involved, whereby the contract became unenforceable against the defendant employee; and that his finding, being supported by the evidence, should not be disturbed. From a reading of the judge's opinion and judgment it clearly appears that he did not pass upon any controverted question of fact. I am therefore of the opinion that the case should be remanded for another hearing. Mr. Justice Bell concurs in this dissent.